UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, For the Use and Benefit of: MARTIN BROTHERS CONSTRUCTION,<br><br>Plaintiff,<br><br>v.<br><br>WALSH FEDERAL, LLC, et al.,<br><br>Defendants. | No. 2:24-cv-01705-DJC-SCR<br><br><u>ORDER</u> |

In 2020, Plaintiff Martin Brothers Construction and Defendant Walsh Federal, LLC, signed a contract for Plaintiff to provide earthwork and asphalt services in constructing an aircraft maintenance hangar at Travis Air Force Base in Fairfield, California. As required by the contract, Plaintiff signed certain waivers throughout the project in exchange for payment for completed work. The interpretation and effect of those waivers is now at issue. Because the Court finds that the affirmative defense of waiver is a factual dispute, Defendants Walsh Federal, LLC, and Travelers Casualty and Surety Company's Motion for Partial Summary Judgment is GRANTED in part and DENIED in part.

## BACKGROUND[1]

On August 6, 2020, Plaintiff, a subcontractor, entered into a written subcontract ("Subcontract") with Defendant Walsh Federal, LLC, the prime contractor, to provide earthwork and asphalt paving services for construction of an aircraft maintenance hangar at Travis Air Force Base. (Pl.'s Resp. to Defendants' Separate Statement of Undisputed Facts ("DSUF") (ECF No. 31) ¶ 2; Subcontract at Ex. A (ECF No. 1-1).) The original value of the Subcontract was $3,750,000.00. (Subcontract at 1.) During the project, the parties entered into several Subcontract Change Orders resulting in a current contract value of $5,201,824. (Resp. to DSUF ¶ 3.)

The Subcontract contemplated changes to its scope and provided for such in Article 4.1 (Changes). (*Id.* ¶ 16.) Article 4.3 (Claims) of the Subcontract also required Plaintiff to submit an Initial Notice of Claim. (*Id.* ¶ 21.) Article 4.3's Initial Notice and Claim requirements required strict compliance with its terms. (*Id.* ¶ 22.)

The Subcontract also provided a procedure for payments whereby Plaintiff must execute a partial (or final) waiver and release prior to or in exchange for payment. (*Id.* ¶ 4; Proc. for Progress Payment (ECF No. 27) at 49, Ex. F.) The Subcontract included at least two form waivers: a California Civil Code section 8132 Conditional Waiver and Release on Progress Payment (the "California Waiver") and Defendant Walsh's own Partial Waiver and Release of Claims for Payment (the "Walsh Waiver"). (Resp. to Plaintiff's Statement of Disputed Facts ("PSDF") (ECF No. 34) at ¶ 19; *see* Waiver & Release Forms (ECF No. 27) at 64–72, Ex. I.)[2] The Subcontract also

---

[1] Defendants request this Court take judicial notice of the Subcontract, the Complaint, and Answers filed in this action. (*See generally* RJN (ECF No. 27).) Because the Complaint and Answers are already part of this Court's record, it need not take judicial notice of them. As to the Subcontract and its related exhibits, the Court grants the request by way of the incorporation by reference doctrine because the Subcontract forms the basis of Plaintiff's claims. Courts can consider documents under the "incorporation by reference" doctrine when a plaintiff "refers extensively to the document or the document forms the basis of the plaintiff's claim. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (citation omitted).

[2] The subcontract provided several representative examples of partial and final "Walsh" and "California" waivers (*see* RJN at 62–72, Ex. I), but the parties agree that the Walsh Waiver and California

included an anti-waiver provision entitled "Severability and Waiver" at Article 13.2. (Subcontract Art. 13.2.) That provision explained that the "failure of either party hereto to insist, in any one or more instances, upon the performance of any of the terms, covenants or conditions of this Agreement, or to exercise any right herein, shall not be construed as a waiver or relinquishment of such term, covenant, condition or right as respects further performance." (*Id.*) Plaintiff signed the Subcontract on August 3, 2020, and Defendant signed on August 6, 2020. (Subcontract at 2.)

During the project, Plaintiff submitted several payment applications for work performed. (Resp. to DSUF ¶ 8.) Plaintiff signed waivers and release of claims on October 31, 2022; December 31, 2022; and March 31, 2023. (Reed Decl. (ECF No. 26) ¶ 4 & Exs. 1–3.) Plaintiff submitted the signed California Waiver and Walsh Waiver together, contemporaneously, for all payment applications throughout the duration of the project. (Martin Decl. (ECF No. 30-1) at ¶ 33; Reed Decl. at Exs. 1-3; Resp. to PSDF ¶ 26.)

To track and document work Plaintiff performed beyond its contracted scope, Plaintiff would prepare a Daily Extra Work Report ("DEWR"). (Resp. to PSDF ¶ 7.) Each DEWR documents the nature of the additional work, the personnel involved, labor hours, equipment used and duration, and any vendors, materials, or suppliers used to complete the work. (*Id.* ¶ 8.) A representative of Defendant Walsh would sign the DEWR to verify the labor, equipment, and materials used. (*Id.* ¶ 10; Reed Dep. 196:9–13.) One copy of the DEWR is retained by Plaintiff's foreman, one by Defendant Walsh, and one is transmitted to Plaintiff's office. (Resp. to PSDF ¶ 11.) Defendant Walsh also received "Daily Reports" which apprised it of the day's work. (*Id.* ¶ 14; Jacob Dep. 20:9–15.) In addition to the DEWRs, the parties communicated through onsite discussions and email correspondence regarding the alleged extra work. (Resp. to PSDF ¶ 15; Molinelli Decl. (ECF No. 30-2) ¶ 11; Martin Decl. (ECF No. 30-1)

---

Waiver, as described above and reflected in the Reed Declaration, are what Plaintiff signed (Reed Decl. at Exs. 1–3).

¶ 22.) During the project, Defendant Walsh acknowledged that it owed Plaintiff certain sums for extra work and discussed payment of those claims. (Resp. to PSDF ¶ 31; Martin Decl. ¶ 39; Reed Dep. 149:17–150:2.)

On October 27, 2023, Plaintiff sent its Certified Claim to Defendant Walsh. (Resp. to PSDF ¶ 35.) Defendant Walsh did not raise the issue of Plaintiff's alleged insufficient documentation to preserve its extra work claims until after Plaintiff submitted its Certified Claim. (Resp. to PSDF ¶¶ 18, 37.)

Defendants' Motion for Partial Summary Judgment is fully briefed. (Mot; Opp'n (ECF No. 30); Reply (ECF No. 32).) On February 19, 2026, the Court held oral argument, at the conclusion of which it took this matter under submission. (ECF No. 39.)

## LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.*

The moving party bears the initial burden of informing the court of the basis for the motion and identifying the portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party to "establish that there is a genuine issue of material fact...." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). The parties must "(A) cit[e] to particular parts of materials in the record . . . or (B) show[ ] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). When determining a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion."

*Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (citation omitted). Ultimately, for the moving party to succeed, the Court must conclude that no rational trier of fact could find for the opposing party. *See id.*

A court may consider evidence as long as it is "admissible at trial." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). "Admissibility at trial" depends not on the evidence's form, but its content. *Block v. City of L.A.*, 253 F.3d 410, 418–19 (9th Cir. 2001) (citation omitted). The party seeking admission of evidence "bears the burden of proof of admissibility." *Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1004 (9th Cir. 2002). If the opposing party objects to the proposed evidence, the party seeking admission must direct the court to "authenticating documents, deposition testimony bearing on attribution, hearsay exceptions and exemptions, or other evidentiary principles under which the evidence in question could be deemed admissible...." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385–86 (9th Cir. 2010). But if evidence falls short of the formalities of Rule 56, a district court still may exercise its discretion "to be somewhat lenient." *Sch. Dist. No. 1J, Multnomah Cnty., Or. V. ACandS, Inc.*, 5 F.3d 1255, 1261 (9th Cir. 1993) (collecting cases).

**DISCUSSION**

Defendants move for partial summary judgment on Plaintiff's state claims. *First*, Defendants contend there is no genuine dispute of material fact as to their affirmative defense of waiver against Plaintiff's breach of contract claim, and *second*, that they are entitled to judgment as a matter of law on Plaintiff's quantum meruit claim. After reviewing the briefing and the evidence in the record, the Court will grant Defendants' Motion in part and deny it in part.

**I. Applicable Law**

The Ninth Circuit "has long held that state law controls the interpretation of Miller Act subcontracts to which the United States is not a party." *United States for Use and Benefit of Reed v. Callahan*, 884 F.2d 1180, 1185 (9th Cir. 1989). Because the

United States is not a party to the instant lawsuit, California law applies when construing the agreement between Plaintiff Martin Brothers and Defendant Walsh.

**II. Waiver**

Beginning with the breach of contract claim, Defendants contend Plaintiff waived its rights to payment for certain alleged "Extra" work when Plaintiff did not expressly reserve those claims pursuant to the parties' agreed-upon contractual procedure. Plaintiff rebuts that it did not waive its rights to payment, but also that, even if it had, Defendant Walsh's subsequent course of conduct waived strict compliance with the terms of the waiver and notice requirements. (*See* Opp'n at 24.)

**A. Payment Process**

The parties' Subcontract explains the process for Plaintiff to receive payment during the project:

> **3.10 Waivers and Affidavits**
>
> When required by the Contractor, and as a prerequisite for payment, the Subcontractor shall provide, waivers and affidavits from the Subcontractor in forms as shown in an Exhibit of this Agreement, as specified by applicable statute, and as required by the Owner and Owner's lender (collectively "Waivers"). Subcontractor agrees that if, without the written consent of the Contractor, the Subcontractor has modified the Waivers in any manner ("Modified Waivers") and has received payment from the Contractor in exchange for the Modified Waivers, the modifications shall have no force and effect and be stricken from the Modified Waivers, the language required by the Waivers be reinserted into the Modified Waivers, and the Contractor shall not have been deemed to have accepted the Modified Waiver and the Subcontractor shall be deemed to have executed unmodified Waivers. . . . Subcontractor warrants and represents that the individual signing the Waivers and affidavits for the Subcontractor has the authority to waive and release the Subcontractor's rights, including but not limited to its Miller Act rights to sue, that the Contractor may rely on said warrant and representation, and that the information contained in the Waiver and affidavit is correct.

(Subcontract (ECF No. 1-1) at 5, Article 3.10.)

The Subcontract additionally includes an exhibit titled "Procedure for Progress Payments." (Subcontract at 37, Ex. F.) All exhibits are "expressly incorporated" into

the parties' Subcontract. (*Id.* at 1.) Relevant here, this particular exhibit specifies that "[p]rior to or in exchange for payment, Subcontractor/Supplier shall prepare and submit a partial (or final) Waiver and Release per Exhibit I." (*Id.* at 37, Ex. F.) In turn, Exhibit I lists several representative samples of waivers and affidavits for Plaintiff's use. (*Id.* at 52, Ex. I.) These waivers include conditional and unconditional Walsh Waivers and conditional and unconditional Mechanics' Lien waivers ("California" waivers) pursuant to California Civil Code section 8132. (*Id.*) The parties agree that Plaintiff signed certain Walsh and California waivers. (Resp. to PSDF ¶¶ 21–22; Reed Decl. at Exs. 1–3.)

The Walsh Waiver is broadly worded and states that Plaintiff releases

> [A]ny and all demands, causes of action and claims for payment, whether known or unknown, including claims under the law of the municipality, State or Federal Government relating to Payment Bonds and Prompt Payment, the Miller Act, or Bonds relating to the Project, and **in addition all lien, or claim of, or right to, lien, under municipal or State laws, relating to Mechanics' Liens, with respect to . . . Project . . . from the beginning of time through the date signed below, including Extras as defined below unless specifically reserved within this waiver and release**, regardless of the amount of money actually received through that date by [Plaintiff].

(*See, e.g.*, Reed Decl., Ex. 2 (ECF No. 26-2) at 3 (emphasis added).) It is undisputed that Plaintiff signed these Walsh Waivers. (Reed Decl. at Exs. 1–3.) While Plaintiff contends that it has provided sufficient evidence documenting its attempts to reserve any such "extra work" claims through its contemporaneous and simultaneous submission of the California waivers (Resp. to PSDF ¶ 22), the California waivers only pertain to Mechanics' Lien claims pursuant to California Civil Code section 8132. (*See generally* Ex. I.) Moreover, the Walsh Waiver appears to encompass all such Mechanics' Lien claims in addition to all other claims described therein. (*See generally* Reed Decl. at Exs. 1–3); *see also JH Kelly, LLC v. AECOM Tech. Servs.*, 660 F. Supp. 3d 840, 851–52 (N.D. Cal. 2022) (explaining that courts usually interpret a conflated waiver including both lien and claim waivers to be a "broad and

unambiguous general release"). Plaintiff's argument that the two waivers should be construed together does not change this result. Plaintiff's inclusion of the California waiver purporting to reserve all "Extras" does not preserve its Miller Act claims because the California waiver applies only to mechanics' liens under California state law.

Plaintiff alternatively argues that the anti-modification provisions of the Walsh Waiver precluded it from reserving extra claims apart from use of the California Waiver. (*See* Opp'n at 14; Pl.'s Statement of Disputed Facts ("PSDF") (ECF No. 30-4) ¶ 48.) The Court is not convinced. Plaintiff has not adequately explained why any such "Extras" could not have been clearly identified and reserved in the boxes provided on the face of the Walsh Waiver or, if the work was too voluminous, expressly identified in those boxes and incorporated as an "Extras" attachment. The Court does not find Plaintiff's anti-modification argument persuasive.

Nevertheless, the issue of whether Plaintiff's waiver is enforceable remains disputed. Plaintiff has provided evidence that Defendant Walsh's subsequent actions in approving and paying for some of Plaintiff's extra work claims notwithstanding the signed Walsh Waivers were tantamount to relinquishing strict compliance with the terms of the Walsh Waiver. (Opp'n at 24–26; Martin Decl. ¶¶ 26–27, 40; Resp. to PSDF ¶ 39.) While the parties dispute the extent to which extra work claims were passed through to the Government for payment, it is undisputed that at least five of the extra work claims — bills 1, 8, 11, 29 and 41 — were ultimately paid, (*see* Walsh Letter at Ex. 2 (ECF No. 30-3) at 9), despite Defendant's argument that such claims were prohibited by the contract (*id.*; *see also* Reed Dep. 150:6–151:12). Given that Walsh has passed through some of Plaintiff's extra work claims through to the Government despite Plaintiff's explicit waiver, a reasonable jury could conclude that Defendant Walsh has relinquished strict compliance with the terms of its Waivers. *See U.S. ex rel. EPC Corp. v. Travelers Cas. & Sur. Co. of Am.*, 423 F. Supp. 2d 1016, 1029-1030 (D. Ariz. 2006) (finding question of fact regarding whether parties' subsequent communications

relaxed strict contractual requirements). Defendant Walsh also does not dispute Plaintiff's allegation that Walsh previously paid Plaintiff for some of the extra work claims pursuant to a change order. (*See, e.g.*, Resp. to PSDF ¶ 32; Martin Decl. ¶¶ 26–27.) Defendant further concedes it raised the issue of Plaintiff's waiver of extra work claims for the "first time" after receiving the Certified Claim. (Resp. to PSDF ¶¶ 18, 37.) Finally, Plaintiff has provided substantial evidence showing contemporaneous notice and communication with Walsh through the procedure for the extra work bills. Against this factual backdrop, it remains disputed whether Defendant required strict compliance with its Waivers.

**B. Anti-Waiver Provision in Subcontract**

As a fallback measure, Defendant points to Article 13.2 of the Subcontract to bolster its argument that Plaintiff validly waived its rights and that, by the terms of the Subcontract, Defendant could not itself waive, or forfeit, its own strict notice requirements. (Reply at 7.) This argument fails.

Article 13.2 provides in part that "[t]he failure of either party hereto to insist, in any one or more instances, upon the performance of any of the terms, covenants or conditions of this Agreement, or to exercise any right herein, shall not be construed as a waiver or relinquishment of such term, covenant, condition or right as respects further performance." (Subcontract at 18, Article 13.2.) In other words, by agreeing to this provision Plaintiff acknowledged that Defendant could not forfeit its strict compliance requirements. But this anti-waiver provision is not enforceable because it does not comply with the statutory requirements of the Miller Act for a valid waiver. Those requirements, codified at 40 U.S.C § 1333(c), specify that "[a] waiver of the right to bring a civil action on a payment bond required under this subchapter is void unless the waiver is (1) in writing; (2) signed by the person whose right is waived; and (3) *executed after the person whose right is waived has furnished labor or material for use in the performance of the contract*." 40 U.S.C. § 1333(c) (emphasis added). Because Plaintiff agreed to this anti-waiver provision prior to furnishing any labor or

materials in furtherance of the Subcontract, Article 13.2 does not meet all the requirements of 40 U.S.C. § 1333(c) and is unenforceable. While "there is nothing about the Miller Act that forecloses the parties from restructuring the subcontract governing their relationship when, in adversity, they seek to cut their respective losses, the Miller Act does not permit such restructuring to preclude a subcontractor from exercising its rights in accordance with the express terms of the Act in the absence of a clear and explicit waiver of those rights." *U.S. for Use and Benefit of Walton Tech., Inc. v. Weststar Eng'g, Inc.*, 290 F.3d 1199, 1209 (9th Cir. 2002) (citation modified).

California law is in accord. Notwithstanding a written provision in a contract, parties may, by their words or conduct, waive contractual rights. *Wind Dancer Prod. Grp. v. Walt Disney Pictures*, 10 Cal. App. 5th 56, 78 (2017). As discussed above, Plaintiff has presented genuine disputes of material fact as to whether Defendant did so here. California courts will find waiver when a party's acts "are so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished." *Id.* Waiver is ordinarily a question of fact unless "there are no disputed facts and only one reasonable inference may be drawn." *Id.* (quoting *DuBeck v. Cal. Physicians' Serv.*, 234 Cal. App. 4th 1254, 1265 (2015). On this record, a reasonable jury could conclude that Defendant Walsh, by its conduct, relinquished strict compliance with the Walsh Waiver.

In conclusion, Defendants' Motion for Partial Summary Judgment as to the affirmative defense of waiver is therefore DENIED.

**III. Quantum Meruit**

Defendants also seek judgment as a matter of law on Plaintiff's quantum meruit claim on the basis that a quantum meruit claim cannot be pursued where there is a contract governing the same subject matter. (MSJ at 17–18.) The Court will grant the Motion for Summary Judgment as to this claim.

"When parties have an actual contract covering a subject, a court cannot – not even under the guise of equity jurisprudence – substitute the court's own concepts of

fairness regarding that subject in place of the parties' own contract." *Hedging Concepts, Inc. v. First Alliance Mortgage Co.*, 41 Cal. App. 4th 1410, 1420 (1996); *see also Wal-Noon Corp. v. Hill*, 45 Cal.App.3d 605, 613 (1975) ("There cannot be a valid, express contract and an implied contract, each embracing the same subject matter, existing at the same time.") It is undisputed that the parties entered into the Subcontract and that it governs the terms of the parties' relationship, as explained above. Plaintiff's argument that it may plead claims in the alternative does not apply when, as here, the existence of the Subcontract is not in dispute. *See DPR Constr. v. Shire Regenerative Med.*, 204 F. Supp. 3d 1118, 1131 (S.D. Cal. 2016).

Accordingly, Defendants' Motion for Partial Summary Judgment as to the quantum meruit claim is granted.

**CONCLUSION**

For the foregoing reasons, IT IS HEREBY ORDERED that Defendants' Motion for Partial Summary Judgment (ECF No. 24) is GRANTED IN PART as follows:

1. Defendants are granted summary judgment on the quantum meruit claim; and
2. The Motion is otherwise DENIED.

IT IS SO ORDERED.

Dated: **July 13, 2026**

Daniel J. Calabretta

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC8 – MartinBros.24cv1705.msj